LATHAM *et al.* v. NORTHERN PAC. R. CO.

*(Circuit Court, D. Washington, W. D. April 7, 1891.)*

1. EQUITY—PURCHASE OF A LAWSUIT—PUBLIC POLICY.
   Where complainants have gained possession of premises by purchasing the rights of tenants, with the purpose of repudiating the lease and disputing the title of defendant as landlord of their grantors, they will be relegated to such legal rights as they may have acquired, and equity will not aid them by enjoining the efforts of defendant to regain possession even by force.

2. SAME—FEDERAL COURTS—BREACH OF THE PEACE—INJUNCTION.
   Though the defendant is confessedly intending to regain possession of the premises by the use of force, which is unlawful, and calculated to provoke a breach of

the peace, yet, in view of the fact that the state courts furnish abundant means for punishing forcible entries and detainers and breaches of the peace, a federal court will not restrain such intention by injunction.

In Equity. Bill for injunction.

*Applegate & Titlow*, for plaintiffs.

*Mitchell, Ashton & Chapman*, for defendant.

HANFORD, J. The plaintiffs in this case are the owners and in possession of a wharf upon which there is a warehouse and store building, and in connection with it there is a grid-iron, situated in the harbor of Tacoma, adjoining the track and yard of the Northern Pacific Railroad Company. The space covered by this wharf and improvements is entirely disconnected from the upland, being distant from the shore line from 200 to 300 feet; the intervening space being occupied by the railroad company, and covered by its tracks, buildings, and improvements. In fact, the wharves and improvements of the railroad company surround the plaintiffs' premises on three sides thereof, and there is no way of ingress or egress to and from said premises from the land except over the improvements owned by and in use of the railroad company. The plaintiffs did not construct the wharf and improvements which they claim, but acquired the same from the builders thereof, who were tenants of the railroad company, and who entered into possession of the space covered by said wharf and improvements under a written lease from the railroad company, whereby they contracted to pay ground-rent, and upon the termination of the lease to peaceably surrender possession, and of said lease the plaintiffs had actual knowledge at and before the time of their purchase. The object of this suit is to obtain an injunction for the protection of plaintiffs in possession of their wharf and improvements, the defendant being now engaged in extending and adding to its improvements by filling in with earth from the bank, and constructing new side tracks and switches to increase its yard room, by means of which improvements the railroad company proposes and intends to absorb and occupy all the space covered by the plaintiffs' wharf and buildings.

The question as to what disposition shall be finally made of the premises, and as to which, if either, of these parties shall ultimately be permitted to acquire title to, or be recognized as owner of, the premises, cannot be determined in this suit, and the discussion thereof at the present time is, in my opinion, premature. The only question which the court is called upon to decide is whether the plaintiffs are entitled to invoke the aid of a court of equity to protect them in the possession of their wharf by enjoining the defendant from proceeding with a strong hand, and without process of law, to dispossess them, and destroy their improvements. The plaintiffs do not claim to own the space which they occupy with their improvements. The case, as submitted to the court, rests almost entirely upon the fact of mere possession at the time of commencing this suit; and they contend that, without title other than mere possession, they are entitled to protection against the defendant, whom they say has no title, and therefore no right to interfere with them. In thus resting their claim upon

possession, they distinctly and expressly disclaim any rights under the lease to their grantors. They deny that they have ever occupied the position of tenants to the defendant, deny that the defendant has ever made a valid lease to the premises in question, and deny its power to make a lease. In addition to the fact of possession, the only consideration for equitable interference urged is that, while the plaintiffs are without title, still, under the laws of the state, provision is made giving them, as owners of valuable harbor improvements, a preference right to acquire title from the state, and it is assumed that this preference right is dependent upon the maintenance of the present improvements, and the continuance of plaintiffs in possession thereof. And the plaintiffs say that they will be damaged by the loss of their preference right, unless the defendant be restrained from interfering with their possession, and that the damages from such loss cannot be estimated.

The laws of the state, however, do not give the plaintiffs, absolutely, any such right as claimed. In addition to questions to be determined as between the parties, there are provisions made in the statutes for the location of a harbor rim to be reserved from sale, which may include these premises, and which leaves the existence of a right to purchase the premises upon any condition uncertain,—too uncertain, in my opinion, to afford any ground upon which to base a decree; and the right to an injunction in this case is left dependent entirely upon mere possession. The possession of the plaintiffs must be regarded as either tortious or lawful. If the plaintiffs are trespassers, and their possession tortious, it matters not whether ownership of the premises be in the defendant or the state of Washington, for in either case a court of equity will refuse to give them relief, or to aid or protect them in their continued wrongdoing. If their possession be lawful, it is because of a license to them from the owner to occupy, by reason of which they are to be regarded as tenants of the owner. I do not mean by this that it is essential to the lawfulness of their possession that there should be a written lease, or any express contract or certificate showing a license from the owner; but permission to occupy must have been granted, or possession acquiesced in in such a way as to create a tenancy for a definite period, or a tenancy at will or a tenancy by sufferance. As the structures and improvements owned by the plaintiffs are in aid of commerce and of public utility, and not prohibited by any law, the state should be regarded as having acquiesced in, in their maintenance, and, as against the state, the possession is not unlawful.

As against the defendant, a serious question arises by reason of the manner in which the plaintiffs acquired their possession. By purchasing the improvements from persons who voluntarily sustained the relation of tenants to the defendant, the plaintiffs could, with the consent of the defendant, have succeeded to their rights as tenants; and, if occupying that position before the court, they would be entitled to its protection as against any contemplated wrong on the part of their landlord. But they do not occupy such a position, for they repudiate the lease and all its covenants. Confessedly they have gained possession of the premises

with the deliberately formed intention of disputing the right and title theretofore asserted by the defendant as landlord of their grantors, who made the improvements which they claim. If they succeed in their contention in this case, they will, by virtue of possession acquired by purchase from the tenants of defendant, have acquired a position not otherwise attainable, enabling them to commence, maintain, and win this lawsuit, or, to state the case more concisely, they will be the gainers by an investment intentionally made in a lawsuit. It seems to me hardly necessary to repeat, in this connection, what has been so often reiterated in the decision of the courts, that a purchaser of the rights of a tenant can obtain by such purchase no right superior to that of his grantor; that by such a purchase, made with knowledge of the facts, the vendee becomes substituted to the same rights, and obligated to observe and perform the duties and covenants, of the tenant whom he succeeds. One who has been let into possession of valuable property, by reason of having assumed the relation of a tenant, will not be permitted to dispute the title of his landlord; neither can the vendee do so successfully. Public policy and the established principles of equity forbid that any man shall profit by an investment voluntarily made in property with the object in view of defeating by litigation another's claim to the same property. By such an investment, a man may acquire legal rights, but for the protection of such rights he should depend entirely upon the law courts, and equity should leave him to assert his legal rights in the proper forum. Neither the plaintiffs nor their grantors were ignorant of their rights, or of the defendant's rights, or lack of rights, respecting the premises at the times of the several transactions affecting the case; nor were they entrapped by the defendant, or induced by unfair means, to become tenants, or to build or buy any of the improvements; and there is nothing in the facts to bring the case within any known exception to the general rule by which a tenant and those in privity with him are estopped, while retaining possession, from disputing the landlord's title. The estoppel is founded upon the possession, and not upon the instrument of demise. Hence it is of no consequence whether the defendant had or had not lawful authority to execute the lease. 1 Taylor, Landl. & Ten. §§ 89, 91, 92.

I cannot avoid the conclusion that, as against the defendant, the possession of the plaintiffs of the premises in controversy is, and was at the time suit was commenced, tortious, because of their repudiation and denial of the defendant's claim of a right of possession to which their possession is subordinate.

From a careful review of the whole case I have been able to discover no ground whatever to justify the issuing of an injunction except the fact that the defendant confessedly is intending to use force to gain possession of the premises in question, in order to occupy the same for its own purposes, a proceeding which is unlawful and unjustifiable, calculated to create a breach of the peace, and to encourage others to resort to force and violence in order to gain and hold mere property rights. For this reason I have felt very strongly inclined to exert the power of the

court in the interest of the public, for the double purpose of condemning such unnecessary use of force, and to preserve peace and good order in the community; and if this court were a court of the state of Washington, vested with any part of the powers of the local government, and a conservator of the peace in this community, I should on that ground grant the injunction prayed for. But it is not necessary or proper for a national court to thus interfere in matters of local concern. The laws of this state make ample provision for punishing breaches of the peace, forcible entries and detainers, and the malicious destruction of property, and afford ample remedies to individuals suffering injury by such wrongful conduct. The courts of the state have ample power to enforce these laws, and apply the proper remedies in all cases for the redress of such wrongs; and I am therefore constrained to decide that the plaintiffs are not entitled to any part of the relief prayed for, and that this suit be dismissed at their costs. I shall not, however, allow the defendant to recover any part of the sum paid to the examiner for his fees and services in the taking of testimony, for the reason that it is apparent to me from reading the testimony, and the report of the proceedings before the examiner, that the expense of taking the testimony was unreasonably increased by the manner in which the cross-examination of the plaintiffs' witnesses was conducted, and the offering of irrelevant and unnecessary testimony. I consider that the attorneys for both parties are about equally in fault for the manner in which the proofs were taken, and shall leave the parties to bear the expense in the proportion that it has been paid by them, respectively.